IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

SARAH L. SNYDER,

      **Plaintiff,**

v.                                   **Case No. 3:18-cv-01021**

LAKIN CORRECTIONAL CENTER;
W.V. DIVISION OF CORRECTIONS;
LAKIN HEAD OF MEDICINE (JANE DOE);
LAKIN NURSE PRACTITIONER (JANE DOE);
LAKIN CORRECTIONAL OFFICER (JOHN DOE); and
LAKIN HOUSING UNIT OFFICER (JOHN DOE),

      **Defendants.**

## PROPOSED FINDINGS AND RECOMMENDATIONS

Plaintiff, Sarah Snyder (hereinafter "Plaintiff"), proceeding *pro se,* seeks money damages under 42 U.S.C. § 1983 for violations of her civil rights that allegedly occurred when she was incarcerated at the Lakin Correctional Center ("Lakin") in Mason County, West Virginia. (ECF Nos. 2, 15). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by standing order has been referred to the undersigned United States Magistrate Judge for total pretrial management and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 3). Currently pending before the Court are a Motion to Dismiss and an Amended Motion to Dismiss made by Lakin Correctional Center and the West Virginia Division of Corrections and Rehabilitation (hereinafter "Defendants"). (ECF Nos. 11, 17).

Having thoroughly reviewed Plaintiff's allegations, the undersigned **FINDS** that Plaintiff's claims against these Defendants are barred by the Eleventh Amendment to the United States Constitution (the "Eleventh Amendment"), and Defendants are entitled to dismissal. The undersigned also **FINDS** that Plaintiff's state law claims also should be dismissed against Defendants for failure to comply with the West Virginia Medical Professional Liability Act ("MPLA"), West Virginia Code § 55-7B-1, et seq. Therefore, the undersigned **RECOMMENDS** that the presiding District Judge **GRANT** Defendants' motions to dismiss, (ECF Nos. 11, 17), and **DISMISS** Plaintiff's amended complaint against them, (ECF No. 15), **with prejudice**, as to Plaintiff's claims based on federal law, and **without prejudice** as to Plaintiff's medical negligence claims.

## I.    <u>Relevant Facts</u>

Plaintiff filed her complaint in June 2018. (ECF No. 2). In the complaint, Plaintiff asserts that while incarcerated at Lakin in May 2016, she began experiencing severe menstrual bleeding.[1] (*Id.* at 4-8). Plaintiff reported her medical condition to prison staff, but was repeatedly denied medical care. (*Id.*). At one point, Plaintiff was sent to the medical unit by "work staff," but was ordered by correctional officers in the medical unit to return to her cell without receiving care. Plaintiff became progressively more ill due to loss of blood. (*Id.*). On June 9, 2016, Plaintiff's blood count was checked and revealed to be abnormally low. (*Id.* at 5). She was sent to the hospital where she received an emergency blood transfusion. Plaintiff states that hospital staff told her she would have died the next day if she had not received treatment. (*Id.*). Plaintiff remained in the hospital until June 12, 2016. After being transferred to a different prison, Plaintiff learned

---

[1] While Plaintiff initially stated these events occurred in 2015, later filings make clear that the events occurred in 2016. (ECF Nos. 20 at 2, 16-1 at 5-15).

that she had cervical cancer, and this disease was the cause of her frequent blood loss. (*Id.* at 6).

On August 28, 2018, Plaintiff filed a Motion seeking to amend her complaint in order to add new defendants. (ECF No. 10). Plaintiff could not recall the names of the individuals she sought to add as defendants and instead provided brief physical descriptions and job titles. (ECF No. 10-1 at 2-3). Plaintiff incorporated by reference the factual and legal allegations of her first complaint. (*Id.* at 2). For relief, Plaintiff requested monetary compensation in the amount of $1,500,000 "for the pain and suffering Plaintiff endured from the negligent actions of the Defendants." (*Id.*). Plaintiff asserted that the Defendants' failure to provide adequate medical care was "atrocious and inhumane," and caused her to suffer from "outrageous pain." (*Id.* at 4). Plaintiff believed that "all Defendants committed negligence and the Medical Professionals committed Malpractice." (*Id.* at 5).

On September 7, 2018, Defendants Lakin and the West Virginia Division of Corrections and Rehabilitation ("DOC") filed a Motion to Dismiss and accompanying Memorandum. (ECF Nos. 11, 12). In the motion, Defendants argued that the Eleventh Amendment bars Plaintiff's claims against them, because they are arms or agencies of the State of West Virginia entitled to sovereign immunity in federal court from claims seeking money damages. (ECF No. 12 at 4). Defendants also asserted that they are not "persons" eligible to be sued under 42 U.S.C. § 1983. (*Id.* at 5-6). Defendants further contended that, to the extent Plaintiff is asserting a medical professional liability claim under West Virginia law, she has failed to comply with statutory requirements necessary to assert such a claim. Finally, Defendants argued that Plaintiff's complaint must be dismissed as she failed to exhaust her administrative remedies. (*Id.* at 6-9).

3

On September 11, 2018, the undersigned entered an Order granting Plaintiff's request to amend her complaint. (ECF No. 14). In order for the complaint to proceed, however, the undersigned noted that the Jane and John Doe defendants had to be identified, so that they could be properly served. (*Id.* at 1). Accordingly, the undersigned ordered Defendants to attempt to identify the proposed defendants described by Plaintiff, and to file with the Clerk of the Court their names and addresses. (*Id.* at 1-2).

On September 20, 2018, Defendants filed a Notice of Filing in Response to the undersigned's Order, in which they informed the Court that staff at Lakin had attempted to ascertain the identities of the individuals described by Plaintiff, but had been unable to do so. (ECF No. 16). Defendants attached an exhibit, which included an affidavit explaining their efforts to identify the proposed defendants, as well as several incident reports related to Plaintiff's incarceration at Lakin. (ECF No. 16-1). Defendants contemporaneously filed an Amended Motion to Dismiss and supporting memorandum. (ECF Nos. 17, 18). Defendants filed the amended motion in order to correct an error in the earlier motion, as Defendants had discovered that, contrary to their initial assertion, Plaintiff had in fact filed an administrative grievance related to the medical care at issue. (ECF No. 17 at 1-2). Defendants now argue that Plaintiff's complaint is nevertheless still subject to dismissal for failure to exhaust, as the record reflects that her administrative complaint was resolved at the initial stage of review, and Plaintiff did not appeal it further. (*Id.* at 2). Defendants' other arguments in support of dismissal remain unchanged. (ECF No. 18 at 1-6).

On October 9, 2018, Plaintiff filed a Response in Opposition to Defendants' Motion to Dismiss and an accompanying memorandum. (ECF Nos. 19, 20). Plaintiff disputes Defendants' contentions that her complaint should be dismissed. Specifically, Plaintiff

asserts that she has effectively exhausted all her administrative remedies, arguing that she was improperly barred from availing herself of the administrative remedies by Defendants. (ECF No. 19 at 2). Plaintiff also asserts that she has a valid medical professional liability claim under West Virginia law and has satisfied all the statutory requirements necessary to file such a claim. (*Id.*). Plaintiff requests oral argument be granted regarding the motion to dismiss. (*Id.* at 3). Plaintiff argues that Defendants are not protected by the Eleventh Amendment, because the Eleventh Amendment does not apply to claims for injunctive or declaratory relief and she is seeking such relief. (ECF No. 20 at 4). Plaintiff also contends that the Eleventh Amendment bars suits against states only by citizens of another state, and, furthermore, "does not prevent a federal court from enjoining conduct that a state itself has prohibited." (*Id.* at 4-5).

Plaintiff additionally filed a contemporaneous Response to Defendants' Notice. (ECF No. 21). In the response, Plaintiff claims that Defendants' professed inability to discern the identities of the proposed defendants is "false and misleading." (*Id.* at 1). Plaintiff further states that she believes the attached incident reports include two of the individuals she wishes to add as defendants. (*Id.* at 2). Plaintiff indicates that, "to the best of the Plaintiff's recollection," Ava Roush, a therapist identified in an incident report dated June 14, 2016, and William Stuckey, a correctional officer identified in several incident reports, are two of the previously unidentified defendants. (ECF Nos. 16-1 at 10-12; 21 at 3).

On October 16, 2018, Defendants filed a Reply to Plaintiff's objections regarding their efforts to identify the unnamed defendants. (ECF No. 22). Defendants contest Plaintiff's assertion that they are willfully misleading the Court with respect to their inability to identify the unnamed defendants. (*Id.* at 3). Defendants argue that they are

simply unable to determine the identity of the Jane Doe and John Doe defendants based on the descriptions provided by Plaintiff. (*Id.* at 4).

Defendants additionally filed a Reply to Plaintiff's response regarding their motion to dismiss. (ECF No. 23). Defendants argue that "[t]o the extent that [Plaintiff] is asserting that Lakin Correctional Center is independently a legal entity amenable to suit, apart from the [DOC], she identifies no support for this contention," and that Lakin is in fact an institution owned and operated by the state. (*Id.* at 3). Defendants rebut Plaintiff's contention that the Eleventh Amendment does not bar her suit, stating that Plaintiff is simply incorrect in her interpretation of the law. (*Id.* at 4). Defendants state that, despite Plaintiff's assertion she is seeking prospective relief, she asks only for compensatory damages. (*Id.* at 5).

## II.   <u>Standards of Review</u>

Defendants DOC and Lakin move to dismiss the complaint on the basis of Eleventh Amendment sovereign immunity. Defendants describe their Motion to Dismiss as one filed pursuant to Fed. R. Civ. P. 12(b)(6), or, alternatively, Fed. R. Civ. P. 12(b)(1). (ECF No. 17 at 2). Defendants are correct that "[t]he Fourth Circuit has not resolved whether a motion to dismiss based on the Eleventh Amendment is properly considered pursuant to Rule 12(b)(1) or 12(b)(6)." *Haley v. Virginia Dept. of Health*, Case No. 4:12-cv-0016, 2012 WL 5494306, at *2 n.2 (W.D. Va. Nov. 13, 2012) (citing *Andrews v. Daw,* 201 F.3d 521, 525, n.2 (4th Cir. 2000)). "The recent trend, however, appears to treat Eleventh Amendment immunity motions under Rule 12(b)(1)." *Id.; see also Zemedagegehu v. Arthur*, No. 1:15cv57, 2015 WL 1930539, at *3 (E.D. Va. Apr. 28, 2015); *Johnson v. North Carolina*, 905 F. Supp. 2d 712, 719 (W.D.N.C. Oct. 17, 2012) (collecting cases). A motion under Rule 12(b)(1) challenges the court's subject matter jurisdiction over the dispute.

6

*Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir. 1982)

A Rule 12(b)(1) motion can be presented in two ways. First, the movant may claim that the jurisdictional allegations of the complaint are not true. *Adams,* 697 F.2d at 1219. In that case, the court "is to regard the pleadings as mere evidence on the issue, and may consider evidence outside of the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams,* 697 F.2d at 1219). Second, the movant may contend, as Defendants do here, that "a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Adams,* 697 F.2d at 1219. When presented with this contention, the court assumes that the allegations in the complaint are true and affords the plaintiff the same procedural protection she would receive under Rule 12(b)(6). *Id.* The burden of proving that the court has subject matter jurisdiction rests with the plaintiff. *Johnson*, 905 F. Supp.2d at 719. However, the court should grant dismissal "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*

A motion under Rule 12(b)(6) tests the sufficiency of the complaint. *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007) (stating to survive a 12(b)(6) motion, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face"). Accordingly, the Court will assume that the facts alleged in the amended complaint are true and will draw all reasonable inferences in Plaintiff's favor as the nonmoving party. *Burbach*, 278 F.3d at 405–06. The purpose of Rule 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). "Furthermore, when as here,

a Rule 12(b)(6) motion is testing the sufficiency of a civil rights complaint, 'we must be especially solicitous of the wrongs alleged' and 'must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief *under any legal theory which might plausibly be suggested by the facts alleged.*'" *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999) (quoting *Harrison v. United States Postal Serv.,* 840 F.2d 1149, 1152 (4th Cir.1988)).

While the Court "take[s] the facts in the light most favorable to the [P]laintiff, … [the Court] need not accept the legal conclusions drawn from the facts," and "need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)). A complaint fails to state a claim when, accepting the plaintiff's well-pleaded allegations as true and drawing all reasonable inferences, the complaint lacks "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A pleading that "offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do" and a complaint will not "suffice if it tenders naked assertions devoid of further factual enhancements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted).

Plaintiff filed her amended complaint *pro se*, and courts are required to liberally construe *pro se* complaints. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, even under this less stringent standard, the amended complaint still must contain sufficient factual allegations to support a valid legal cause of action. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). The Court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th

Cir. 1998), construct the plaintiff's legal arguments for her, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

## III.  Discussion

### 1. Exhaustion

As an initial matter, Defendants argue that Plaintiff's complaint should be dismissed as she failed to exhaust her available administrative remedies. (ECF No. 23 at 7). Plaintiff disputes Defendants' contention and asserts that she attempted to exhaust her administrative remedies, but was improperly denied the opportunity to do so by Defendants. (ECF No. 19 at 2-3).

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust administrative remedies prior to filing a complaint in federal court. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *Porter v. Nussle,* 534 U.S. 516, 524 (2002) ("Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory. All available remedies must now be exhausted; those remedies need not meet federal standards, nor must they be plain, speedy, and effective. Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit.") (citations and internal quotation marks omitted). The purpose of the exhaustion requirement is twofold: first, "exhaustion protects administrative agency authority" by giving an agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court ... and it discourages disregard of the

agency's procedures;" second, "exhaustion promotes efficiency," as claims "generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court" and sometimes "claims are settled at the administrative level, and in others, the proceedings before the agency convince the losing party not to pursue the matter in federal court." *Woodford v. Ngo*, 548 U.S. 81, 89, (2006) (citations and internal quotation marks omitted). Further, "even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration." *Id.*

Recently, in *Ross v. Blake*, the Supreme Court of the United States ("Supreme Court") considered a case in which a Maryland state inmate filed a § 1983 complaint alleging that a correctional officer used excessive force against him and that another officer failed to take action to protect him. *Ross*, 136 S. Ct. 1850, 1855 (2016). One of the officers raised the PLRA's exhaustion requirement as an affirmative defense, stating that the inmate brought suit without first following the prison's prescribed procedures for obtaining an administrative remedy. *Id.* The district court dismissed the lawsuit for lack of exhaustion, but the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") reversed the decision, stating that the PLRA's exhaustion requirement was "not absolute" and special circumstances could excuse exhaustion, such as when a prisoner reasonably, but mistakenly, believed that he had sufficiently exhausted his administrative remedies. *Id.* at 1856. Upon review, the Supreme Court explicitly rejected the Fourth Circuit's "special circumstances" exception, noting the exhaustion requirement in the PLRA is statutorily mandated and not amenable to judicially created exceptions. *Id.* The Supreme Court explained that the mandatory language of the PLRA meant that a court may not excuse a failure to exhaust, even to take special circumstances into account. *Id.*

10

Yet, the Supreme Court pointed out in *Ross* that the PLRA does contain one express exception: an inmate need not exhaust "unavailable" remedies. *Id.* at 1858. The Court identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide relief to aggrieved inmates." *Id.* Second, an administrative process is likewise unavailable when it is "so opaque" that "no ordinary prisoner can discern or navigate it." *Id.* Finally, an inmate need not exhaust administrative remedies when prison officials thwart the inmate's access to the grievance procedure "through machination, misrepresentation, or intimidation." *Id.* at 1860. "[S]uch interference with an inmate's pursuit of relief renders the administrative process unavailable." *Id.*

Plaintiff takes issue with events that occurred while she was incarcerated in a West Virginia correctional facility. Consequently, she was also required to exhaust her administrative remedies in accordance with the West Virginia Prisoner Litigation Reform Act, W. Va. Code § 25-1A-1, *et seq.*, before filing this federal lawsuit. Even if West Virginia law provides exceptions to the state's exhaustion requirement that are not offered under the PLRA, the federal exhaustion requirements govern this action. Therefore, Plaintiff must have exhausted the state's administrative remedies unless they were unavailable to her. *Freeland v. Ballard*, No. 2:14-CV-29445, 2017 WL 337997, at *3 (S.D.W. Va. Jan. 23, 2017) (collecting cases).

In West Virginia, the administrative remedy procedure of an inmate's place of confinement governs the exhaustion process. *White v. Haines*, 618 S.E.2d 423, 431 (W.

Va. 2005) ("[B]efore an inmate may bring a civil action challenging the conditions of his/her confinement, he/she must first exhaust the administrative remedies provided by the correctional facility *in which he/she is housed.*") (emphasis added). At the relevant time, exhaustion of administrative remedies in regard to claims involving the conditions of confinement at a state correctional facility required a "final decision from the Commissioner of Corrections or the Commissioner's designee, or the Executive Director of the Regional Jail Authority, or the Director's designee." W. Va. Code Ann. § 25-1A-2. In this case, Plaintiff was housed at Lakin, a DOC operated correctional center. At all relevant times, the DOC's Policy Directive 335.00 established procedures whereby state inmates may seek review of complaints which relate to any aspect of their imprisonment. (ECF No. 11-1). To complete the internal grievance procedures, the inmate must first submit a G-1 Grievance Form to the Unit Manager. If the Unit Manager's response is unfavorable, the inmate may appeal within five days to the Warden/Administrator by filing a G-2 Grievance Form. If the Warden/Administrator's response is unfavorable, the inmate may make a final appeal to the Commissioner/designee of the Division of Corrections. The administrative remedy process must be completed within 60 days. *See Sullivan v. King,* No. CV 3:17-02347, 2018 WL 651815, at *5 (S.D.W. Va. Jan. 8, 2018), *report and recommendation adopted*, No. CV 3:17-2347, 2018 WL 650217 (S.D.W. Va. Jan. 31, 2018).

As stated, exhaustion of remedies is mandatory and has limited exception. *Porter,* 534 U.S. at 524. Plaintiff claims that she exhausted all available state remedies by filing grievances with the DOC and that she was improperly barred by the DOC from filing further grievances. While the record suggests that Plaintiff may not have exhausted administrative remedies, at this early stage of litigation, neither party has had an

opportunity to develop and produce evidence determinative of the exhaustion issue. Based on the limited record before the Court, and Plaintiff's claim that she completed all steps of the administrative process that were "available" to her, it would be premature to dismiss the amended complaint for failure to exhaust administrative remedies. *See Custis v. Davis*, 851 F.3d 358, 361–62 (4th Cir. 2017) (discussing that it is a rare, exceptional instance where administrative exhaustion is apparent on the complaint's face and noting that the inmate's statement that he attempted to exhaust his administrative remedies "may equally imply that he attempted, but could not, exhaust his administrative remedies—and thus, that he exhausted all remedies that were available to him."); *see also Spradlin v. Rodes*, No. 3:16-CV-06986, 2017 WL 4277150, at *3 (S.D.W. Va. Aug. 31, 2017), *report and recommendation adopted,* No. CV 3:16-6986, 2017 WL 4248849 (S.D.W. Va. Sept. 25, 2017) (same); *White v. Van Duncan*, No. 1:10-cv-014, 2010 WL 2813492, at *2 (W.D.N.C. July 15, 2010) (finding that, based on the limited record and viewing the allegations in the light most favorable to the plaintiff, the plaintiff attempted to utilize the administrative grievance procedure and his grievances were ignored and it would be improper to dismiss the complaint for failure to exhaust, as the issue could be raised later in a motion for summary judgment); *Brightwell v. Hershberger*, No. CV DKC 11-3278, 2016 WL 5815882, at *2 (D. Md. Oct. 5, 2016) ("The practical availability of remedies is not a pure question of law. As the Supreme Court noted when remanding *Ross v. Blake*, determining whether administrative remedies are truly available requires development of a record of facts and evidence relating to whether the administrative process operated as a dead end, whether it was knowable by an ordinary prisoner, and whether officials thwarted the effective invocation of the administrative process through threats, game-playing, or misrepresentation.") (citations omitted). Therefore, the

13

undersigned **FINDS** that Defendants' motion to dismiss on the ground of lack of exhaustion is premature and should be denied.

### 2. Defendants are not eligible to be sued under § 1983

Title 42 U.S.C. § 1983 provides a remedy to parties who are deprived of federally protected civil rights by persons acting under color of any state "law, statute, ordinance, regulation, custom, or usage." Congress enacted § 1983 "to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." *Monroe v. Pape,* 365 U.S. 167, 171-172. In order to state a viable claim under § 1983, a plaintiff must show that: (1) a ***person*** deprived him or her of a federally protected civil right, privilege, or immunity and (2) that the ***person*** did so under color of State law. *See American Mfr. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50-52 (1999) (emphasis added).

In *Will v. Mich. Dept. of State Police,* the Supreme Court of the United States ("Supreme Court") considered "the question whether a State, or an official of the State while acting in his or her official capacity, is a 'person' within the meaning of … § 1983." 491 U.S. 58, 60 (1989). Examining the language and purpose of the statute, the Supreme Court ultimately concluded that Congress did not intend to subject States to liability for deprivations of civil liberties, when such suits would have been barred by the States' sovereign immunity. *Id.* at 66. The holding in *Will* applied not only to lawsuits against the State itself, but also to suits against "public entities and political subdivisions" that were an "arm or alter ego" of the State. *Maryland Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d 255, 260 (4th Cir. 2005) (quoting *Moor v. Alameda County,* 411 U.S. 693, 717 (1973)).

Accordingly, the Court must consider whether Lakin and the DOC are arms or alter

egos of the State of West Virginia. If they are arms or alter egos of the State, then Plaintiff cannot maintain a federal civil rights complaint against them under § 1983, because that statute may only be used to file suit against a person. "In determining if a public entity is an alter ego of the state … courts have generally looked to the standards announced in cases addressing whether governmental entities are entitled to Eleventh Amendment immunity as an arm of the state." *Maryland Stadium Auth.,* 407 F.3d at 260.  In this case, the query is easy as it is well-established that the DOC is an "arm of the State" of West Virginia and is not a "person" under § 1983 for purposes of actions seeking money damages. *See, e.g., Mitchell v. Janice*, Civil Action No. 1:07-0625, 2009 WL 4666010, *1, n. 3 (S.D. W. Va. 2009) ("[T]he West Virginia Department of Corrections is not a "person" as required by Section 1983"); *Berry v. Rubenstein*, No. 01:07–cv–535, 2008 WL 1899907, at *2 (S.D.W. Va. April 25, 2008) (same); *Rakes v. Rush*, No. CIV.A. 2:09-018, 2009 WL 2392097, at *7 (S.D.W. Va. Aug. 4, 2009) (same). Likewise, Lakin is nothing more than a facility operated and controlled by the DOC. (ECF No. 11-1 at 2). As such, the correctional center is subsumed by the DOC and, hence, is also not a "person" under § 1983. *See Meadows v. Huttonsville Corr. Ctr.*, 793 F. Supp. 684, 686 (N.D.W. Va. 1992), *aff'd*, 991 F.2d 790 (4th Cir. 1993) (finding that correctional center was "part of the West Virginia prison system" and therefore was not subject to suit under § 1983); *see also Williams-El v. Dunning*, 816 F. Supp. 418, 420 (E.D. Va. 1993) ("It is clear under Virginia law that the Alexandria Detention Center, a local jail, is an arm of the State."); *Ranson v. W. Reg'l Jail*, No. 3:17-CV-01547, 2018 WL 914958, at *6 (S.D.W. Va. Jan. 25, 2018), *report and recommendation adopted*, No. CV 3:17-1547, 2018 WL 907421 (S.D.W. Va. Feb. 15, 2018) ("As a facility operated by the West Virginia Regional Jail and Correctional Facility Authority, the Western Regional Jail has no separate existence and is entitled to

the same immunity.").

Therefore, the undersigned **FINDS** that the DOC and Lakin as arms of the State, are not "persons" subject to suit under § 1983. *See Roach v. Burch,* 825 F. Supp. 116 (N.D.W. Va. 1993); *see also Will,* 491 U.S. at 109; *Cantley v. Western Regional Jail and Correctional Facility Authority,* 728 F. Supp.2d 803 (S.D.W. Va. 2010) (finding that the West Virginia Regional Jail Authority and Correctional Facility is not a "person" for purposes of a claim for money damages under § 1983.); *Lewis v. Western Reg'l Jail,* No. 3:11–cv–01016, 2012 WL 3670393, at *5 (S.D.W. Va. July 24, 2012), *report and recommendation adopted by* 2012 WL 3726874 (S.D.W. Va. Aug. 27, 2012) (same); *Dement v. Summers Cnty. Courthouse,* No. 5:13–cv–08899, 2015 WL 461560, at *3 (S.D.W. Va. Feb. 3, 2015) (finding that Southern Regional Jail was not subject to § 1983 suit). As such, Plaintiff's complaint against these Defendants should be dismissed.

### 3. Eleventh Amendment immunity

Defendants argue that they are entitled to dismissal based on the principle of sovereign immunity found in the Eleventh Amendment to the United States Constitution. The Eleventh Amendment provides, in relevant part, that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Although the Eleventh Amendment refers only to suits by citizens of other states, contrary to the argument raised by Plaintiff, the Supreme Court has construed the Amendment to "establish that an unconsenting State is immune from suits brought in federal court by her own citizens as well as by citizens of another state." *Port. Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (2009) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)) (markings omitted). The

immunity created by the Amendment protects both the State itself and its agencies, divisions, departments, officials, and other "arms of the State." *Taylor v. Ozmint*, Case No. 0:10–50–HMH–PJG, 2011 WL 286133, at *2 (D.S.C. Jan. 7, 2011) (citing *Will*, 491 U.S. at 70; *see also Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1977) ("[I]t has long been settled that the reference [in the Eleventh Amendment] to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities.").

Three narrow exceptions to Eleventh Amendment immunity exist. *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 248-49 (4th Cir. 2012). First, the State may waive its right to immunity and consent to suit. *Lapides v. Bd. of Regents Univ. Sys. of Ga.*, 535 U.S. 613, 618 (2002). Such a waiver must be express, or in other words, the waiver must be an "unequivocal statement of the state's intention to subject itself to suit in federal court." *See Regueno*, 2013 WL 1837881, at *3 (quoting *Westinghouse Elec. Corp. v. W. Va. Dept. of Highways*, 845 F.2d 468, 471 (4th Cir. 1988)) (markings omitted); *and Price v. W. Virginia Air Nat'l Guard, 130TH Airlift Wing*, No. 2:15-CV-11002, 2016 WL 3094010, at *2–3 (S.D.W. Va. June 1, 2016) (holding that insurance provisions contained in the West Virginia Code provide a limited waiver of the State's sovereign immunity in state courts; however, that waiver does not extend to suits brought against the State in federal court). Historically, the State of West Virginia and its agencies have not waived sovereign immunity in this type of suit, and there is no indication that they are inclined to do so now. *See Kinder v. PrimeCare Med., Inc.,* No. CIV.A. 3:13-31596, 2015 WL 1276748, at *7 (S.D.W. Va. Mar. 19, 2015); *Skaggs v. W. Reg'l Jail,* No. CIV.A. 3:13-3293, 2014 WL 66645, at *5 (S.D.W. Va. Jan. 8, 2014); *Chafin v. W. Reg'l Jail*, No. 3:13-cv-01706, 2013 WL 3716673, at *4 (S.D.W. Va. July 12, 2013); *Thompson*

*v. W. Va. Reg'l Jail/Corr. Auth.*, No. 3:13-1897, 2013 WL 3282931, at *4 (S.D.W. Va. June 27, 2013); *Meadows*, 793 F. Supp. at 686. Therefore, the waiver exception does not apply here.

Second, "Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and 'act[s] pursuant to a valid grant of constitutional authority.'" *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) (quoting *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73). In *Will*, the Supreme Court concluded that Congress did not have the States in mind as potential defendants when it imposed liability on "persons" under § 1983. *Will,* 491 U.S. at 65. Noting that ordinary rules of statutory construction required Congress to make any alteration of the "usual constitutional balance between the States and the Federal Government ... unmistakably clear in the language of the statute," the Supreme Court observed that had Congress intended to include States as "persons" for the purposes of § 1983, it would have explicitly done so. *Id.* at 65 (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 242 (1985)). Two years later, the Supreme Court reaffirmed its holding in *Will* and explained that "interpreting the words '[e]very person' to exclude the States accorded with the most natural reading of the law, with its legislative history, and with the rule that Congress must clearly state its intention to alter 'the federal balance' when it seeks to do so." *Hafer v. Melo*, 502 U.S. 21, 26 (1991) (quoting *Will*, 491 U.S. at 65). Thus, Congress has not abrogated Eleventh Amendment sovereign immunity in the context of a § 1983 action. *See Quern v. Jordan*, 440 U.S. 332, 340 (1979).

As to the third and final exception, "the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (citing *Ex Parte Young*, 209 U.S. 123,

(1908)); *see also Freeland v. Ballard*, 6 F. Supp. 3d 683, 694 (S.D.W. Va. 2014) ("Pursuant to the Eleventh Amendment, a federal court may enjoin state officials to conform their future conduct to federal law, which is distinguishable from a retroactive monetary award paid from State funds."). "The *Ex Parte Young* exception is directed at 'officers of the state [who] are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings'" to enforce an unconstitutional act against affected parties. *McBurney v. Cuccinelli, II*, 616 F.3d 393, 399 (4th Cir. 2010) (citing *Ex Parte Young*, 209 U.S. at 155-56). Plaintiff asserts that her complaint may continue under this exception as she is requesting prospective injunctive relief. (ECF No. 20 at 4). However, a state officer must be named under this exception and that officer must have "proximity to and responsibility for the challenged state action" before the exception can be invoked. *Id.* Moreover, the exception "applies only to prospective relief, does not permit judgments against state officers declaring that they violated federal law in the past, and has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (citations omitted). Because the DOC and Lakin are not state officers, the third exception to Eleventh Amendment immunity is inapplicable. *Lee-Thomas*, 666 F.3d at 249 (recognizing that lawsuit must name state official as defendant, not state agency); *Chafin*, 2013 WL 3716673, at *5 (recognizing same); *see also Thomas v. Nakatani*, 309 F.3d 1203, 1208 (9th Cir. 2002) ("*Ex Parte Young* doctrine creates a fiction by allowing a person to enjoin future state action by suing a state official for prospective injunctive relief rather than the state itself. Even so, the Supreme Court has emphasized the importance of respecting this fiction.").

In any event, despite Plaintiff's contention that she meets this exception, Plaintiff

does not actually request prospective injunctive relief at any point in the pleadings, and instead seeks only compensatory damages. Moreover, as Plaintiff has been released from incarceration, even if she did request prospective injunctive relief, her release renders such a request moot. *See Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) ("[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there."); *see also Owens v. FCI Beckley*, No. 5:12-CV-03620, 2013 WL 4519803, at *8 (S.D.W. Va. Aug. 27, 2013) (transfer and imminent release rendered moot any injunctive relief related to claims against prison).

In sum, since none of the exceptions apply, the undersigned **FINDS** that the DOC and Lakin are shielded by the Eleventh Amendment's sovereign immunity from liability on Plaintiff's complaint; therefore, Plaintiff's claims based on violations of federal law should be dismissed against these Defendants.

### 4. State tort claims

Defendants argue that, to the extent Plaintiff is raising a claim sounding in negligence, she is unable to do so as she has not complied with statutorily imposed prerequisites. (ECF No. 12 at 6). Claims asserting medical negligence in the State of West Virginia are subject to the provisions of the MPLA. The MPLA defines "medical professional liability" as "any liability for damages resulting from death or injury of a person for any tort or breach of contract based on health care services rendered, or which should have been rendered, by a health care provider or health care facility to a patient." W.Va.Code § 55–7B–2(d). A "health care facility" includes a "state-operated institution or clinic providing health care." *Davis v. Greene*, No. CIV.A. 2:08-1143, 2009 WL 3064106, at *15 (S.D.W. Va. Sept. 18, 2009) (quoting W. Va.Code § 55–7B–2(f)).

The special requirements imposed by the MPLA do not "apply to Federal suits filed pursuant to 42 U.S.C. § 1983, and alleging deliberate indifference to a serious medical need." *Id.* They do, however, apply to claims alleging medical negligence based on state tort violations. *Id.* Accordingly, to the extent that Plaintiff is attempting to raise claims based on medical negligence, these claims are governed by the MPLA.

Under the MPLA, before a plaintiff may institute a civil action alleging medical negligence, the plaintiff must serve the proposed defendants with both a pre-suit notification and a screening certificate of merit. *Id.* § 55–7B–6(b). The pre-suit notice must be sent by certified mail, at least 30 days prior to the filing of a suit, to each health care provider intended to be joined and must "include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent." *Id.* The screening certificate of merit must be executed under oath by a health care provider qualified as an expert under West Virginia law and must state with particularity:

> (1) The expert's familiarity with the applicable standard of care in issue;
>
> (2) the expert's qualifications;
>
> (3) the expert's opinion as to how the applicable standard of care was breached; and
>
> (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding.

W. Va.Code § 55–7B–6(b). There is an exception to the screening certificate of merit requirement in cases where the plaintiff believes that no certificate is necessary "because the cause of action is based upon a well-established legal theory of liability which does not

require expert testimony supporting a breach of the applicable standard of care." *Id.* § 55–7B–6(c). In that circumstance, the plaintiff must file a statement "specifically setting forth the basis of the alleged liability of the health care provider in lieu of a screening certificate of merit." *Id.* Compliance with these provisions is "substantive" and "mandatory;" therefore, failure to adhere to the MPLA's statutory requirements provides grounds for a dismissal of the complaint. *See Stanley v. United States*, 321 F. Supp.2d 805, 807 (N.D.W. Va. 2004); *see also Davis v. Alderson Fed. Prison Camp HSU Med. Staff,* No. CIV.A. 1:12-01479, 2015 WL 2338587, at *2 (S.D.W. Va. Apr. 16, 2015), *report and recommendation adopted*, No. CIV.A 1:12-01479, 2015 WL 2341917 (S.D.W. Va. May 13, 2015) ("Compliance with West Virginia Code § 55–7B–6 is mandatory prior to filing suit in federal court."); *Winfree v. S. Cent. Reg'l Jail*, No. 2:16-CV-06332, 2018 WL 737429, at *4 (S.D.W. Va. Jan. 16, 2018), *report and recommendation adopted*, No. 2:16-CV-06332, 2018 WL 736045 (S.D.W. Va. Feb. 6, 2018) ("[C]ompliance with the pre-filing requirements of the [MPLA] ... is a threshold condition to proceed with a medical malpractice claim in either state or federal court.").

Plaintiff does not contend that this case meets the exception to the otherwise mandatory screening certificate of merit requirement, but instead argues that she has complied with the statutory pre-filing notice requirements. (ECF No. 20 at 7). Plaintiff asserts that she filed a complaint against Defendants through the West Virginia Legislative Claims Commission ("Claims Commission") prior to bringing this lawsuit.[2] (*Id.*). Plaintiff further asserts that she provided Defendants with the mandatory pre-filing information during an April 27, 2018, telephone conference attended by Plaintiff, the

---

[2] The West Virginia Court of Claims was renamed the West Virginia Legislative Claims Commission by an act of legislation in 2017. *See* http://www.wvlegislature.gov/Joint/claimscommission.cfm.

Claims Commission, and Defendants. Plaintiff states that in the telephone conference, the Claims Commission told her she should file this lawsuit. (*Id.*).

Regardless of the information shared, a telephone conference involving only Plaintiff, the Claims Commission, and Defendants simply does not comply with the requirements of a screening certificate of merit, which must be written and executed under oath by a health care provider qualified as an expert under West Virginia law, and must explain the basis of the expert's belief that the standard of care was breached, as well as an opinion regarding how the breach of care resulted in injury or death. *See* W. Va.Code § 55–7B–6(b). The failure to demonstrate compliance with the screening certificate of merit requirement is fatal to Plaintiff's claim absent a showing, which Plaintiff does not attempt, that the claim falls into the "narrow" exception to the generally applicable requirement. *See Marshall v. United States*, No. 1:18CV19 (AJT/TCB), 2019 WL 1293342, at *4 (E.D. Va. Mar. 20, 2019); *see also Callahan v. Cho*, 437 F. Supp. 2d 557, 564 (E.D. Va. 2006) ("Accordingly, plaintiff's failure to present such a certificate at the time of the complaint's filing is fatal to his claim."); *Martin v. United States,* No. CIV.A. 1:10-1399, 2012 WL 1111326, at *4 (S.D.W. Va. Mar. 30, 2012) ("Courts have held that a plaintiff's failure to adhere to the pre-filing requirements of the MPLA warrants dismissal."); *Green v. Rubenstein*, 644 F. Supp. 2d 723, 738 (S.D.W. Va. 2009) (failure to comply with statutory pre-filing requirements warranted dismissal); *Justice v. Hinchman*, No. 2:17-CV-02369, 2018 WL 3624120, at *8 (S.D.W. Va. May 2, 2018), *report and recommendation adopted sub nom.*, No. 2:17-CV-02369, 2018 WL 3614217 (S.D.W. Va. July 27, 2018) (same).

The undersigned is aware that courts have occasionally afforded plaintiffs, who have failed to comply with the requirements of the MPLA, additional time to attain

compliance if they have demonstrated a "good faith and reasonable effort to further the statutory purposes." *See Pearson v. Panaguiton*, No. CV 1:15-07411, 2018 WL 1997757, at *3 (S.D.W. Va. Apr. 27, 2018), *aff'd*, 746 F. App'x 245 (4th Cir. 2018) (quoting *Westmoreland v. Vaidya*, 222 W. Va. 205, 211, 664 S.E.2d 90, 96 (2008)). In *Pearson*, this Court declined to grant such an exception, distinguishing the plaintiff's lack of awareness of the requirements of the MPLA and mistaken belief that exhausting his claims via the Bureau of Prison's administrative process was sufficient to comply with the requirements of the MPLA, from plaintiffs who had erroneously, but reasonably, believed they were entitled to proceed under the exception to the screening certificate of merit requirement. *Id.* at *2-4.

Plaintiff's mistaken belief that an attempt to file a complaint with the Claims Commission and a subsequent telephone conference call with the Defendants were sufficient to comply with the pre-suit requirements of the MPLA is similar to the *Pearson* plaintiff's mistaken belief that compliance with the exhaustion requirements of the Bureau of Prison's administrative remedy program was sufficient to fulfill the requirements of the MPLA. As such, the undersigned **FINDS** that Plaintiff has not demonstrated a good faith attempt to comply with the pre-suit requirements of the MPLA sufficient to waive their mandatory application. Accordingly, the undersigned further **FINDS** that Plaintiff's state-law claims against these Defendants based on medical negligence should be dismissed, without prejudice. *See Jones v. United States*, No. 1:11CV115, 2013 WL 955202, at *5 (N.D.W. Va. Mar. 12, 2013) *aff'd*, 531 Fed.Appx. 306 (4th Cir. 2013) (holding that the certificate of merit provisions of W. Va.Code § 55–7B–6 are not intended to restrict or deny a citizen's access to the courts; therefore, dismissal for the failure to supply a certificate of merit should be without prejudice). The dismissal

should be without prejudice. so that Plaintiff is not entirely foreclosed from pursuing these claims in another forum.

## IV.   **Proposal and Recommendations**

For the reasons set forth above, the undersigned **RECOMMENDS** that the presiding District Judge **GRANT** Defendants' Motion to Dismiss and Amended Motion to Dismiss, (ECF Nos. 11, 17); **DISMISS** the Amended Complaint**, with prejudice**, as to Plaintiff's claims alleging violations of federal law against Defendants, and **without prejudice** as to Plaintiff's claims alleging medical negligence against Defendants, (ECF No. 15); and **REMOVE** these Defendants from the docket of the Court.

Plaintiff is notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Plaintiff shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing

parties, Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiff, Defendant, and any counsel of record.

**FILED:** July 5, 2019

Cheryl A. Eifert
United States Magistrate Judge